Andrew D. Skale (SBN 211096)
askale@mintz.com
Benjamin L. Wagner (SBN 243594)
blwagner@mintz.com
Eric J. Eastham (SBN 261048)
ejeastham@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Attorneys for Plaintiffs, UNITE EUROTHERAPY INC. and UNITE EUROTHERAPY LTD

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE EUROTHERAPY, INC. and UNITE EUROTHERAPY LTD, <br><br> Plaintiffs, <br><br> vs. <br><br> COSMETIC HAIRCARE BV, THEMA HAIRCARE BV, HOOGE BEHEER BV, TIME/SYSTEM BENELUX BV, MOBIPRO BENELUX BV, <br><br> Defendants. | Case No. **'13CV1144 MMA BGS** <br><br> **UNITE EUROTHERAPY, INC.'S COMPLAINT:** <br><br> (1) Breach of Contract <br> (2) Unfair Competition <br> (3) Trademark Infringement <br> (4) Trademark Dilution <br> (5) Intentional Interference with Prospective Economic Advantage <br> (6) Negligent Interference with Prospective Economic Advantage <br><br> **JURY DEMAND** |

Plaintiffs UNITE EUROTHERAPY, INC. and UNITE EUROTHERAPY LTD (collectively, "UNITE"), for their Complaint against Defendants COSMETIC HAIRCARE BV, THEMA HAIRCARE BV, HOOGE BEHEER BV, TIME/SYSTEM BENELUX BV, and MOBIPRO BENELUX BV (collectively, "Defendants") allege and state as follows:

## THE PARTIES

1. Plaintiff UNITE EUROTHERAPY, INC. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 1255 Keystone Way, Suite 106, Vista, CA 92081.

2. Plaintiff UNITE EUROTHERAPY LTD is a limited company organized and existing under the laws of Britain with its principal place of business located at Third Floor, 24 Chiswell Street, London, United Kingdom. UNITE EUROTHERAPY LTD is the sales agent/European Union liaison for Plaintiff UNITE EUROTHERAPY, INC.

3. Defendant COSMETIC HAIRCARE BV is a private company with limited liability organized and existing under the laws of the Netherlands with its statutory seat and principal place of business located at Sluisweg 196 5237 MZ 's Hertogenbosch, Netherlands. COSMETIC HAIRCARE BV is a wholly-owned subsidiary of Defendant HOOGE BEHEER BV.

4. Defendant THEMA HAIRCARE BV is a private company with limited liability organized and existing under the laws of the Netherlands with its statutory seat and principal place of business located at Sluisweg 196 5237 MZ 's Hertogenbosch, Netherlands. THEMA HAIRCARE BV is a wholly-owned subsidiary of Defendant HOOGE BEHEER BV.

5. Defendant TIME/SYSTEM BENELUX BV is a private company with limited liability organized and existing under the laws of the Netherlands with its statutory seat and principal place of business located at Sluisweg 196 5237 MZ 's

Hertogenbosch, Netherlands.  TIME/SYSTEM BENELUX BV is a wholly-owned subsidiary of Defendant HOOGE BEHEER BV.

6. Defendant MOBIPRO BENELUX BV is a private company with limited liability organized and existing under the laws of the Netherlands with its statutory seat and principal place of business located at Sluisweg 196 5237 MZ 's Hertogenbosch, Netherlands.  MOBIPRO BENELUX BV is a wholly-owned subsidiary of Defendant HOOGE BEHEER BV.

7. Defendant HOOGE BEHEER BV is a private company with limited liability organized and existing under the laws of the Netherlands with its statutory seat and principal place of business located at Sluisweg 196 5237 MZ 's Hertogenbosch, Netherlands.  HOOGE BEHEER BV is the parent holding company for Defendants COMETIC HAIR CARE BV, THEMA HAIRCARE BV, TIME/SYSTEM BENELUX BV and MOBIPRO BENELUX BV.  Defendants COSMETIC HAIR CARE BV and HOOGE BEHEER BV are referred to collectively herein as "CHC."

8. On information and belief, each of the Defendants was the agent of each of the others, and committed the acts or omissions alleged herein on behalf of each of the other Defendants.  On information and belief, each of the Defendants authorized, approved, ratified or directed the acts or omissions of each of the other Defendants that are alleged herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims for trademark infringement and unfair competition under the Lanham Act, including 28 U.S.C. §§ 1331 and 1338.  This court also has diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332, because Plaintiff UNITE EUROTHERAPY, INC. is a citizen of and resides in California and Plaintiff UNITE EUROTHERAPY LTD is a citizen of and resides in the United Kingdom, whereas Defendants are citizens of and reside in the Netherlands, and the amount in controversy exceeds $75,000.  This Court has

supplemental or pendant jurisdiction over any remaining claims under 28 U.S.C. §§ 1367 and 1338(b), as they are related to the federal claims, and arise out of the same case and controversy as the federal claims in this action. As discussed below, UNITE owns Benelux, United Kingdom, European Union and United States trademarks and copyrights, therefore UNITE has personal jurisdiction over Defendants under Article 4 of the General Agreement on Tariffs and Trade ("GATT") Agreement on Trade Related Aspects of Intellectual Property Rights ("TRIPS").

10. Personal jurisdiction and venue is proper in this judicial district, including under 28 U.S.C. sections 1391(b) and (c) and 1400(b), because a substantial part of the events or omissions giving rise to the claims occurred in the district and Defendants are subject to personal jurisdiction in this forum and judicial district by, among others, their repeated availment and direction of its activities toward this district. CHC directed its activities at this forum and district by acting as a distributor of UNITE products and purposefully injured UNITE and infringed UNITE's marks while knowing UNITE to be located in San Diego, California. The remaining Defendants purposefully injured and infringed UNITE's trademarks while knowing UNITE to be located in San Diego, California.

## GENERAL ALLEGATIONS

11. Through extensive efforts, UNITE developed a premium, boutique line of professional hair care products. Each underwent extensive testing and research, so as to ensure superior performance and acceptance by professional salons.

12. UNITE holds a Benelux trademark registration for the mark UNITE EUROTHERAPY issued by the Benelux Office of Intellectual Property, BOIP No. 1050879, along with other Benelux, US and international rights in its UNITE EUROTHERAPY mark.

13. In addition, UNITE owns European Union registered trademarks for the names of two UNITE products, CONUNDRUM PASTE, Reg. No. 011078136 and U LUXURY, Reg. No. 011170438. UNITE also owns United States registered

trademarks for the UNITE brand, Reg. No. 3930994, UNITE EUROTHERAPY, Reg. No. 2920563, twenty-five other United States registered trademarks covering various UNITE product names, logos and packaging designs, and copyright registrations for UNITE product packaging, logos and the content and design of its website. UNITE also owns United Kingdom registered trademarks, including a registered trademark in the UNITE EUROTHERAPY brand, Reg. No. 2412967. Collectively, UNITE's trademarks and copyrights that are registered in the Benelux, European Union, United Kingdom and United States are referred to as "UNITE IP."

**CHC Becomes a Non-Exclusive Distributor of UNITE Products in the Benelux**

14. In late 2009, UNITE and CHC began discussing the possibility of CHC becoming a distributor of UNITE hair care products in Belgium and the Netherlands (collectively, "Benelux"). After negotiations concerning the details of the parties' relationship, the parties ultimately reached an oral agreement whereby CHC would become a non-exclusive distributor of UNITE hair care products and obtain a non-exclusive license for the UNITE IP in the Benelux territory, subject to various additional provisions.

15. On November 18, 2009, UNITE's President, Mr. Andrew Dale, hand-delivered CHC's co-owner, Mr. Dick Damen, a letter memorializing the terms and conditions of CHC's distributor relationship with UNITE (the "Distribution Agreement") that the parties had previously agreed upon, which is attached as Exhibit 1 and incorporated herein by reference. The Distribution Agreement confirms that UNITE granted CHC non-exclusive Benelux distribution rights for UNITE products and a non-exclusive license to use the UNITE IP, subject to certain conditions.

16. The parties have never disputed the validity of the terms and conditions of the Distribution Agreement and at no point during the parties' relationship did CHC, in any manner, dispute or question the validity of these terms.

17. The Distribution Agreement contains, among others, purchase and invoicing terms, defines CHC's non-exclusive territory, and requires CHC to provide

UNITE with monthly sales reports. In addition, the Distribution Agreement prohibits CHC from selling UNITE products at any price below the agreed upon suggested salon cost or from distributing additional brands within the territory without prior notice to and consent of UNITE. The Distribution Agreement further requires CHC to immediately cease selling UNITE products in the event either UNITE or CHC chooses to terminate the Agreement.

18. The Distributor Agreement states the parties' agreement is governed by California law.

19. UNITE repeatedly informed CHC that CHC's full compliance with the terms of the parties' relationship, as confirmed by the Distribution Agreement, was essential for UNITE to permit CHC to continue operating as its distributor.

20. Moreover, CHC orally assented to and ratified the terms in the Distribution Agreement, both before and after UNITE prepared the Distribution Agreement.

### CHC Fails to Maintain UNITE Sales, Despite Being Armed with UNITE's Customer Database

21. Along with the Distribution Agreement, UNITE provided CHC its entire Benelux customer database, which contained valuable contact information and monthly sales figures for approximately seventy salons (the "Customer Database"). UNITE provided CHC the Customer Database in reliance on CHC's agreement to act as a distributor of UNITE products, as memorialized in the Distribution Agreement. The Customer Database showed the salons were collectively purchasing approximately 22,000-25,000 Euro (app. 26,500-33,000 USD) worth of UNITE products each month. At that time, and in return, CHC agreed to only use the Customer Database for the purpose of selling UNITE products.

22. Despite being armed with a list of approximately seventy salons that were already UNITE customers, sales of UNITE products in Benelux decreased while CHC acted as a distributor for UNITE. CHC even proved unable to maintain the

sales volume through the existing UNITE customers in the Customer Database that UNITE had expended significant resources to establish before CHC's involvement with the brand.

### CHC Repeatedly Breaches the Terms of the Distributor Relationship

23. UNITE became aware that CHC was deeply discounting the sales price of its products—by as much as forty-two-and-a-half percent—which damaged the premium UNITE brand and was directly contrary to the Distributor Agreement.

24. In addition, during the parties' relationship, CHC failed to regularly provide required sales reports to UNITE.

25. UNITE eventually learned that CHC's sales force had dwindled from a team that initially consisted of one sales manager and five sales associates to a team of only three part-time sales associates (with no manager). On information and belief, CHC's sales efforts were confined to calling prospective salons (telemarketing) and did not include personal visits to the salons in the territory. Personal visits are industry custom and were a minimum expectation.

26. On information and belief, CHC also purchased the rights to distribute competitive hair care products in the Benelux territory, including those made by Alterna, and began distributing these products to, among others, the UNITE customers in the Customer Database—in direct violation of the terms of the Distribution Agreement.

27. On multiple occasions, UNITE contacted CHC to discuss its continuing failure to adequately increase sales in the Benelux. In response, CHC repeatedly assured UNITE that it would improve sales—to no avail.

### UNITE Gives CHC One Last Chance

28. In early 2013, UNITE learned for the first time that CHC was supplying over 112 salons, yet only achieved sales of approximately $175,000 during 2012. At this point, UNITE concluded that CHC's average sales per salon were much too low

1  and that, in light of this information, CHC's performance as a distributor was
2  unacceptable.
3     29.   As a result, UNITE contacted CHC and requested a meeting to discuss
4  the future of the parties' relationship. The parties met on February 4, 2013 in
5  Eindhoven, Netherlands, and CHC agreed, in writing, to provide UNITE with a full
6  evaluation of its distribution performance and a detailed plan showing how CHC
7  intended to improve sales of UNITE products in Benelux by the end of March 2013.
8     30.   During the meeting, the parties agreed that CHC would improve sales of
9  UNITE products in Benelux by at least thirty percent during February and March
10 2013. UNITE specifically warned CHC that if it failed to increase its sales of UNITE
11 products in Benelux, UNITE would have no choice but to terminate the CHC's
12 distributorship. In a February 6, 2013 email, UNITE confirmed the substance of the
13 discussions with CHC during the February 4th meeting, including CHC's promise to
14 improve sales by thirty percent for February and March 2013.
15    31.   On information and belief, CHC stockpiled UNITE products to create
16 the false impression that it was increasing sales. CHC then sold these products at an
17 enormous discount, so the benefit to UNITE was, at best, minimal.

### UNITE Terminates CHC's Distributorship

19    32.   Despite UNITE's demands and CHC's promises, by April 2013 it
20 became clear to UNITE that CHC did not intend to create a plan for improving
21 UNITE sales or actually raise sales by thirty percent in the Benelux territory.
22 Meanwhile sales of UNITE products in Benelux remained stagnant.
23    33.   As a result of the lackluster sales and CHC's material contractual
24 breaches, on April 19, 2013, UNITE terminated CHC's distributorship, notifying
25 CHC in writing. UNITE offered, as specified in the Distribution Agreement, to
26 repurchase CHC's remaining stock of UNITE products.
27    34.   On information and belief, once it received UNITE's notice of
28 termination of its distributorship, CHC sent a letter to UNITE's Benelux customers

without UNITE's permission, which informed them that it would no longer carry UNITE products, and instead, recommended competitive products to these customers.

35.     On May 3, 2013, UNITE's Netherlands counsel sent a letter to CHC informing it that it had irreparably harmed UNITE's brand and damaged the commercial interests of UNITE in Benelux and throughout Europe. The letter also demanded that CHC immediately cease any sales of UNITE products and any and all use of the UNITE IP, including the "UNITE EUROTHERAPY" trademark, the UNITE logo and the UNITE packaging.

36.     On information and belief, CHC continued to sell UNITE products for at least ten days following UNITE's termination of its distributorship, in violation of the terms of the Distribution Agreement.

**Defendants' Continuing Infringement of the UNITE IP**

37.     Defendants continue to use the UNITE IP without UNITE's permission, including on its websites, http://www.cosmetichaircare.nl and http://www.unitebenelux.nl and the Facebook page https://www.facebook.com/UniteHairBenelux, where the UNITE IP is prominently displayed. Printouts from these three sites are attached hereto as Exhibits 2-4. According to publicly available domain registration information, attached as Exhibit 5, the website http://www.cosmetichaircare.nl is owned by Defendant MOBIPRO BENELUX BV.

38.     UNITE also recently learned that CHC has a Netherlands-based corporate subsidiary named Thema Hair Care B.V. This entity also uses the UNITE IP on its website, www.thema-haircare.nl. A printout showing this website is attached as Exhibit 6. CHC never told UNITE about this website or subsidiary and UNITE never gave its permission for CHC to allow its subsidiary to use the UNITE IP as a sub-licensee. According to publicly available domain registration information, attached as Exhibit 7, the website www.thema-haircare.nl is owned by Defendant TIME/SYSTEM BENELUX BV.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (against Defendants Cosmetic Haircare BV and HOOGE BEHEER BV)

39. UNITE reasserts all allegations in this Complaint as if stated in full herein.

40. The parties entered into an agreement, as confirmed by the Distribution Agreement, whereby CHC agreed to act as non-exclusive distributor of UNITE products in Benelux.

41. UNITE performed all obligations under the agreement, and is excused from all further performance.

42. CHC materially breached the terms of its distributor relationship with UNITE by, among others, (1) selling UNITE products at a price below the suggested salon cost; (2) failing to provide UNITE with regular, monthly sales reports; (3) selling competitive products in Benelux, including to customers in UNITE's Customer Database, without first notifying UNITE; (4) failing to immediately cease sales of UNITE products upon termination of the distributor relationship; and/or (5) refusing to stop the use of the UNITE Brand, including on its website, following the termination of its distributor relationship.

43. As a direct and proximate result of these breaches, UNITE has been damaged in an amount to be determined at trial, but exceeding $75,000.

44. Further, CHC has been unjustly enriched by its sales of hair care products to UNITE customers, as listed in the Customer Database. But for CHC's actions, including CHC's disparagement of UNITE's products, UNITE would have made significantly more sales to these customers.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION
## LANHAM ACT (15 U.S.C. § 1125), COMMON LAW,
## CAL. BUS. & PROF. CODE § 17200 ET SEQ
### (against all Defendants)

45. UNITE reasserts all allegations in this Complaint as if stated in full herein.

46. Defendants have engaged in unfair competition by at least the acts alleged herein.

47. Defendants' acts and omissions alleged herein constitute unfair business practices because the harm of these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers.

48. Defendants' acts and omissions alleged herein constitute unlawful business practices because Defendants' conduct is forbidden by multiple laws, including but not limited to 15 U.S.C. § 1125(a), as well as the common laws, the laws of the State of California, the laws of the European Union and the laws of the United States.

49. Defendants' acts and omissions alleged above constitute fraudulent business practices because consumers are likely to be deceived as a result of Defendants' conduct.

50. As a direct and proximate cause, UNITE has suffered compensatory and consequential damages in an amount to be proven at trial, and is entitled to disgorge Defendants' profits. This damage includes loss of goodwill and dilution of its international UNITE brand.

51. As a direct and proximate result of Defendants' wrongful acts, UNITE has suffered and continues to suffer pecuniary losses and irreparable injury to its business reputation and goodwill, including in the form of dilution and continued harm to goodwill of its international UNITE brand. As such, UNITE's remedies at law are not adequate to compensate for injuries inflicted by Defendants. UNITE is, as a result, entitled to temporary, preliminary and permanent injunctive relief.

52. UNITE is informed and believes, and on that basis alleges that Defendants' actions were willful, intentional, malicious, deliberate and in bad faith, such that punitive damages are justified and reasonable, at an amount to be proved at trial.

53. UNITE is informed and believes, and on that basis alleges that

Defendants willfully, intentionally, maliciously, deliberately and in bad faith infringed UNITE's brand, thus this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT
### (against all Defendants)

54. UNITE reasserts all allegations in this Complaint as if stated herein.

55. As detailed herein, UNITE is the owner of the UNITE IP, including a Benelux trademark registration for the UNITE EUROTHERAPY trademark, BOIP No. 1050879.

56. CHC, as a former distributor of UNITE products, has an affirmative duty to distinguish itself so as to avoid any misrepresentation that it is still a part of UNITE's distribution system. CHC may also not do anything to cause confusion as to its present affiliation.

57. CHC has failed to affirmatively distinguish itself to avoid the false impression that it is still a part of UNITE's distribution system, and on information and belief has purposefully acted under the imprimatur to hair salons, including via its website, that it still has an affiliation or sponsorship with UNITE, and that its actions are within its authorized affiliation to the UNITE brand.

58. Defendant THEMA HAIRCARE BV, as operator of the website www.thema-haircare.nl, which prominently displays the UNITE IP, is likewise liable for trademark infringement due to its use of the UNITE IP without UNITE's permission.

59. Defendant TIME/SYSTEM BENELUX BV is also liable for trademark infringement as owner of the website www.thema-haircare.nl.

60. Defendant MOBIPRO BENELUX BV, as owner of the website http://www.cosmetichaircare.nl, which prominently displays the UNITE IP, is likewise liable for trademark infringement due to its use of the UNITE IP without UNITE's permission.

61. As a result, on information and belief, hair salons have been confused and are likely to be confused into believing that CHC's attempts to trade-out for a competitor's products and even to disparage certain products within the UNITE brand were all with the tacit or express approval of UNITE.

62. As a result of Defendants use of UNITE IP on their websites, consumers are likely to be confused into believing that Defendants are affiliated with, associated with, and/or approved by UNITE or are authorized retailers of UNITE products.

63. As a direct and proximate result of the infringement of its valuable mark, UNITE has suffered compensatory and consequential damages in an amount to be proven at trial.

64. UNITE is informed and believes, and on that basis alleges that Defendants willfully, intentionally, maliciously, deliberately and in bad faith infringed UNITE's marks.

65. UNITE's remedies at law are not adequate to compensate for injuries inflicted by Defendants, accordingly, UNITE is entitled to temporary, preliminary and permanent injunctive relief prohibiting any further trademark infringement.

66. As a result of Defendants' willful infringement, UNITE is entitled to disgorge the profits Defendants unlawfully obtained.

**FOURTH CLAIM FOR RELIEF**
**TRADEMARK DILUTION**
(against all Defendants)

67. UNITE reasserts all allegations in this Complaint as if stated herein.

68. UNITE has a reputation in the Benelux territory, the European Union, the United Kingdom and the United States, and Defendants' use of the distinctive UNITE EUROTHERAPY mark is without due cause, but rather takes unfair advantage of, and is detrimental to, the distinctive character of the UNITE IP, including the UNITE EUROTHERAPY trademark.

69. UNITE's trademarks, including UNITE's UNITE EUROTHERAPY trademark, are distinctive marks and acquired such status prior to the time Defendants

began their use, because before that time:

    a. The mark had a high degree of inherent and acquired distinctiveness;

    b. The mark had been used exclusively by UNITE for an extended duration for the goods and services indicated by UNITE, in the relevant territories;

    c. The advertising and publicity received by the mark has been significant;

    d. The geographical trading area of the mark encompassed at least the Netherlands and Belgium;

    e. There were many highly prominent channels UNITE used for the goods and services under the mark, and Defendants have since chosen to use the ubiquitously stationed medium of the Internet;

    f. The mark was highly recognized in the European Union, including Benelux and the United Kingdom, and in the United States and was highly affiliated with UNITE;

    g. On information and belief, there were no other parties that use the mark for similar goods and services as UNITE; and

70. Such injury is irreparable, and as a result, UNITE is entitled to temporary, preliminary and permanent injunctive relief preventing further dilution by Defendants.

71. By reason of such wrongful acts, UNITE is and was, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationship. Defendants have wrongfully obtained profits and benefits instead of UNITE. To the extent available, UNITE is entitled to compensatory damages and disgorgement of Defendant's said profits, in an amount to be proven at trial, but exceeding $75,000.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (against Defendants Cosmetic Haircare BV and HOOGE BEHEER BV)

72. UNITE reasserts all allegations in this Complaint as if stated herein.

73. UNITE had numerous third-party existing business relationships with its clients located in Benelux, including those in its Customer Database.

74. There was a reasonable probability of future economic benefit from these business relationships, demonstrated by, among other things, UNITE's past economic benefits from similar business relationships, and the status of the relationships prior to CHC's interference.

75. CHC interfered with these existing and prospective business relationships by selling UNITE products for well-below the suggested salon cost, which caused UNITE's customers to buy from CHC at a heavy discount instead of directly from UNITE and/or demand discounts because of CHC's conduct.

76. CHC's conduct was wrongful, separate and apart from the interference itself, in that it violated the terms of the parties' relationship, as confirmed by the Distribution Agreement, which explicitly prohibited any sales of UNITE products at any price below the suggested salon cost and/or sales of non-UNITE products to UNITE customers. CHC knew such conduct would interfere with UNITE's relationship with its customers.

77. CHC knew and intended to interfere with CHC's prospective economic advantage, and interference with these prospective economic relationships was actually and proximately caused as a result. On information and belief, CHC knew such interference was substantially certain to result.

78. Such acts, as alleged above, were done with malice, oppression and/or fraud, entitling UNITE to exemplary and punitive damages, in addition to compensatory damages to be established at trial but exceeding $75,000.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (against Defendants Cosmetic Haircare BV and HOOGE BEHEER BV)

79. UNITE reasserts all allegations in this Complaint as if stated herein.

80. UNITE had numerous third-party existing business relationships with its clients located in Benelux, including those in the Customer Database.

81. There was a probability of future economic benefit from these business relationships, demonstrated by, among other things, UNITE's past economic benefits from similar business relationships, and the status of the relationships prior to CHC's interference.

82. CHC interfered with these existing and prospective business relationships by selling UNITE products for well-below the suggested salon cost, as agreed to by CHC and UNITE, and selling non-UNITE products to UNITE's customers.

83. CHC owed a duty to UNITE to refrain from selling UNITE products for less than the agreed upon suggested salon cost and from selling non-UNITE products to UNITE's customers, as confirmed by the Distribution Agreement. CHC knew was relying on CHC not to engage in such conduct. The adverse effect on UNITE's business was foreseeable by CHC and CHC's conduct could not be performed without a direct effect on UNITE's business.

84. CHC should have known that its conduct would interfere with CHC's prospective economic advantage, and CHC's interference with these prospective economic relationships was actually and proximately caused as a result. On information and belief, CHC knew such interference was substantially certain to result.

85. As a result, UNITE is entitled to compensatory damages to be established at trial but exceeding $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court awards:

1. Judgment in favor of Plaintiffs and against Defendants on all claims;
2. An order temporarily and permanently enjoining Defendants from trademark infringement, dilution and unfair competition, as set forth in this complaint, including from selling any UNITE-branded products;
3. Compensatory damages in an amount to be determined at trial;
4. Defendants' unjust enrichment and profits, for each claim that so permits;
5. Treble damages for willful infringement against Defendants;
6. Statutory damages as allowed by law against Defendants;
7. Exemplary and punitive damages in an amount to be determined at trial;
8. Restitution as allowed by law;
9. Pre-judgment interest at the legally allowable rate on all amounts owed against Defendants;
10. Costs, expenses, and reasonable attorneys' fees pursuant to, among others, 15 U.S.C. § 1117 et seq. and/or the common law against Defendants; and
11. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

UNITE, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury on any and all issues triable by a jury.

Dated: May 8, 2013

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By s/Andrew D. Skale
Andrew D. Skale, Esq.
Benjamin L. Wagner, Esq.
Eric J. Eastham, Esq.

*Attorneys for Plaintiffs*
*UNITE EUROTHERAPY, INC. and UNITE EUROTHERAPY LTD*